**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DRYVEBOX, INC., | ) |
| Plaintiff, | ) Case No: 7:25-cv-08160 |
| v. | ) JURY TRIAL DEMANDED |
| GOLF ON WHEELS INC. & GOLF ON 6 CORP., | ) **COMPLAINT** |
| Defendant. | ) |

Plaintiff Dryvebox, Inc. ("Dryvebox"), as and for its Complaint against Defendants Golf on Wheels Inc. ("Golf on Wheels") and Golf on 6 Corp. ("Golf on 6") (collectively "Defendants"), alleges as follows:

**NATURE OF THE CASE**

1.      Dryvebox is an off-course golf entertainment company that provides state-of-the-art golf simulation technology and experiences. It creates and provides mobile golf trailers, called "Boxes," that provide golfers with an immersive, mobile golf simulation experience. Dryvebox's Boxes are weatherproof, climate-controlled, and solar-powered, allowing Dryvebox to deliver premier golf experiences to places where golf courses or other golf simulators would be infeasible.

2.      Through Dryvebox's team and its franchisees, Dryvebox deploys more than 40 of its innovative Boxes across the United States. Dryvebox's technology has been showcased at some of the most prestigious golf events in North America, including the U.S. Open, President's Cup, and Cognizant Founders Cup.

3.      After observing Dryvebox's success and pioneering technology, Defendants willfully replicated the design and functionality of Dryvebox's patented technology in an attempt to undercut Dryvebox in the market.

1

4.     With this action, Dryvebox seeks compensation for Defendants' willful acts of infringement and to prevent Defendants' continued infringement of Dryvebox's patented innovations.

## PARTIES, JURISDICTION AND VENUE

5.     Plaintiff Dryvebox is a Delaware corporation with its principal place of business in San Francisco, California.

6.     Golf on Wheels is a New York corporation with its principal place of business in Mahopac, New York.

7.     Golf on 6 is a New York corporation with its principal place of business in Mahopac, New York.

8.     This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because all claims arise under the patent laws of the United States.

9.     Defendants are subject to general personal jurisdiction in this Court because they are New York corporations with their principal place of business in Mahopac, New York.

10.     Venue is proper in this Court under 28 U.S.C. § 1400(b) because Defendants, as New York corporations with their principal place of business in Mahopac, New York, reside in this judicial district.

## FACTUAL BACKGROUND

11.     Dryvebox, through its wholly-owned subsidiary, Yang & Cohen Enterprises, Inc. ("Y&C"), owns several patents relating to its technology, including U.S. Patent Nos. 12,151,753 (the "'753 patent"), 12,139,223 (the "'223 patent"), 11,787,488 (the "'488 patent"), 11,560,193 (the "'193 patent"), 11,130,535 (the "'535 patent") and 11,124,253 (the "'253 patent") (collectively the "Dryvebox Patents").

12.    Y&C has granted Dryvebox an exclusive license to the Dryvebox patents.

13.    On January 24, 2023, the U.S. Patent and Trademark Office issued the '193 patent, entitled "User Configurable Trailer." A copy of the '193 patent is attached as **Exhibit A**.

14.    The '193 patent discloses methods, systems, and apparatuses for a configurable trailer for practicing golf.

15.    The systems, methods, and apparatuses of the '193 patent were invented by Dr. Adeel Yang, Michael Leong and Ahmad Yang.

16.    Y&C, a wholly-owned subsidiary of Dryvebox, owns the '193 patent by assignment.

17.    On October 17, 2023, the U.S. Patent and Trademark Office issued the '488 patent, entitled "User Configurable Trailer." A copy of the '488 patent is attached as **Exhibit B**.

18.    The '488 patent discloses methods, systems, and apparatuses for a configurable trailer for practicing golf.

19.    The systems, methods, and apparatuses of the '488 patent were invented by Dr. Adeel Yang, Michael Leong and Ahmad Yang.

20.    Y&C, a wholly-owned subsidiary of Dryvebox, owns the '488 patent by assignment.

21.    Yang, Leong and Yang developed a technology in which a mobile golfing "Box" can allow customers to get the experience of golfing at a driving range, from within an enclosed, mobile space. Dryvebox's Boxes utilize software, one or more sensors, a projector, at least one impact screen, and a strike zone that allow golfers to hit a real golf ball and have its trajectory simulated on the projection screen, as if the golfer were experiencing a classic golf course.

22.     Dryvebox has received substantial acclaim and praise both from within and outside the golf industry for its Boxes. Dryvebox's technology has been showcased at some of the most prestigious LPGA, PGA Tour and PGA Tour Champions events, including the U.S. Open, President's Cup, and Cognizant Founders Cup. Dryvebox has been featured on Golf.com and numerous other media outlets for its innovative technology and unique ability to bring access to golf to those who might not otherwise have the opportunity to pick up a club. Dr. Yang, Dryvebox's Co-Founder and CEO, has been invited to and spoken at industry events, including at the PGA Show.

23.     Dryvebox has served numerous events in New York, New Jersey and Connecticut.

24.     Dryvebox's franchisees operate in Westchester County, New York; Fairfield, Connecticut; Long Island, New York; and Edison, New Jersey.

## THE ACCUSED PRODUCTS

### Defendant Golf On 6 Tries To License Dryvebox's Patented Technology.

25.     In January 2024, Golf on 6, through its owner and agent Jerry DelBene, inquired about becoming a Dryvebox franchisee in New York.

26.     On January 27, 2024, Golf on 6, through its agent Mr. DelBene, completed an application for a Dryvebox franchise.

27.     To complete an application for a Dryvebox franchise, Golf On 6 visited Dryvebox's franchising page on its website: https://www.dryvebox.com/franchising.

28.     There, Golf On 6 saw Dryvebox's public information describing the Box. Dryvebox's franchising webpage states: "Dryvebox's *patented* mobile golf simulator is a party, high-end training studio, and coach's dream setup, all rolled into one configurable trailer."

29.     On January 29, 2024, Dryvebox notified Mr. DelBene that it had received Mr. DelBene's application to become a Dryvebox franchisee. Dryvebox further notified Mr. DelBene that Dryvebox was not yet permitted to establish New York franchises at that time, but would soon be so authorized by the State of New York.

30.     On or about February 27, 2024, at Delbene's request, Dryvebox emailed Mr. DelBene detailed photographs of the interior and exterior of Dryvebox's trailers.

31.     On or about May 13, 2024, Mr. DelBene emailed Dryvebox to ask for information on when Dryvebox's franchisee in Fairfield, Connecticut was scheduled to have an event, so that DelBene could see the trailer in person.

32.     On or about May 14, 2024, Dryvebox sent Mr. DelBene its Franchise Disclosure Document.

33.     On or about May 14, 2024, Mr. DelBene signed a receipt attached to the Franchise Disclosure Document acknowledging that he had received the document.

34.     In its Franchise Disclosure Statement, Dryvebox clearly discloses information abouts patents by providing a list of Dryvebox's issued patents that includes titles, issuance date, type, and number, as well as quoting in its entirety Claim 1 from the '193 patent.

35.     On or about May 31, 2024, Mr. DelBene emailed Dryvebox to share "some concerns that we have after going thru [sic] franchise document." The same day, Dryvebox emailed Mr. DelBene to address those concerns.

36.      On June 3, 2024, Mr. DelBene emailed Dryvebox to relay, "There [sic] still alot of questions and reservations my partners have. . . So I think we are going to have to pass."

**Defendant Decides to Instead Copy Dryvebox's Patented Technology and Website.**

37.     Defendant Golf on 6 was formed on or about October 16, 2018 when it filed its Certificate of Incorporation in New York.

38.     Defendant Golf on Wheels was formed on or about July 24, 2024 when it filed its Certificate of Incorporation in New York – seven weeks after Mr. DelBene emailed Dryvebox that "we are going to have to pass."

39.     Defendants share the same principal place of business at 250 Route 6, Mahopac, New York 10541.

40.     Upon information and belief, Defendants share common ownership.

41.     Defendants created a competing "traveling golf simulator," which Defendants also refer to as the "Golf on Wheels traveling simulator" or the "Golf on Wheels TrackMan simulator" (hereinafter referred to as the "Simulator"). The Simulator uses TrackMan technology, a projector, and sound to simulate a golf experience.

42.     A true and accurate image of the Simulator is displayed below as **Image 1**.

**Image 1**



43.     The Simulator is a copy of Dryvebox's Boxes, replicating its features and appearance.

44.     Defendants launched a website to advertise their copycat product, which copies Dryvebox's website, including copying Dryvebox's text, font, colors and imagery:

45.     For example, compare Dryvebox's website with Defendants' website: https://www.golfonwheels.com/

**Dryvebox's Website**          **Defendant's Website**

**Dryvebox's Website**          **Defendant's Website**

**Dryvebox's Website**



**Defendant's Website**



**Dryvebox's Website**

**Defendant's Website**



**Defendant's Website**



**Dryvebox's Website**

⟳  **Designed with new golfers & fanatics in mind**                 —

Dryvebox was designed to be an inviting space for new golfers and golf fanatics both in mind. We can tailor the experience to the audience - from closest to the pin and longest drive contests to lessons or swing analyses. Whether it's your first time swinging a club or you've been golfing for a lifetime, we've got you covered.

**Defendant's Website**

**Great for New Golfers & Golf Fanatics**                 —

Golf on Wheels was designed to be an inviting space for both new golfers and golf fanatics alike. Our staff will work with you to tailor the programming based on the audience to ensure that everyone can enjoy the feeling of hitting a good golf shot. From mini-lessons to an energized competition, Golf on Wheels is here to do it all.

46.     Through this website, Defendants are soliciting appointments for customers to reserve an experience using the Simulator.

47.     Upon information and belief, Defendants analyzed Dryvebox's Boxes, and the information they collected from Dryvebox while purportedly seeking a Dryvebox franchise, with the objective of replicating Dryvebox's design and functionality in the Simulator.

48.     Defendants further copied Dryvebox's website to design their own website with the intention of competing with Dryvebox.

49.     Dryvebox offers use of its Boxes throughout the United States and Canada, including in the greater New York, New Jersey and Connecticut area.

50.     Defendants are currently soliciting business in direct competition with Dryvebox.

51. Defendants are actively conducting business in the New York area. For example, defendants used their infringing product for a public-facing closest-to-the-pin competition at the Yorktown Feast of San Gennaro on or about September 17 to 21, 2025.

52. Defendants' infringing product is costing Dryvebox customers and sales, including, but not limited to, in New York, New Jersey, and Connecticut.

53. Defendants' infringing product is further costing Dryvebox revenue through its franchisees.

54. Defendants' infringing product is also damaging Dryvebox's brand and causing confusion in the marketplace.

55. The effects of Defendants' infringing product in the market will be long-lasting, irreparable, and will only increase the harm to Dryvebox if Defendants are permitted to continue offering its infringing product.

### COUNT I: INFRINGEMENT OF THE '193 PATENT

56. Dryvebox incorporates all preceding averments by reference.

57. By making, using, offering for rent or use, and selling the Simulator, Defendants infringe at least claim 1 of the '193 patent.

58. Claim 1 discloses: "a configurable trailer for practicing golf, the configurable trailer comprising: [1] a trailer body, the trailer body comprising a first and second moveable slideout, wherein the first and second moveable slideouts may be positioned in a transit state where the slideouts are set in a retracted closed position, and wherein the slideouts may be positioned in an in-use state where the slideouts are set in an extended position; [2] wherein the trailer body includes a first impact screen affixed to an interior of the trailer body, and [3] wherein the trailer body includes a striking zone on the floor of the trailer body where a person may practice hitting balls

with a golf club at the first impact screen while the slideouts are in the extended position; [4] a projection system for projecting imagery of areas of a golf course onto the first impact screen; [5] one or more sensors placed about the interior of the trailer body, the one or more sensors capable of obtaining data about a golf ball that was physically struck from the striking zone; and [6] a system for graphically simulating the ball that was physically struck from the striking zone being shown as continuing into the projected imagery."

59.    The first limitation of claim 1 is "a trailer body, the trailer body comprising a first and second moveable slideout, wherein the first and second moveable slideouts may be positioned in a transit state where the slideouts are set in a retracted closed position, and wherein the slideouts may be positioned in an in-use state where the slideouts are set in an extended position." The Simulator satisfies this limitation. For example, the Simulator contains a ceiling, floor, and two moveable slideouts in the two sides of the trailer, as shown below in **Image 1**.



60.    The second limitation of claim 1 is "wherein the trailer body includes a first impact screen affixed to an interior of the trailer body." Upon information and belief, the Simulator satisfies this claim limitation. **Image 2** shows a mock-up of the Simulator from Defendants' Golf on Wheels Website under the web page titled "The Simulator."



61.    The third limitation of claim 1 is "wherein the trailer body includes a striking zone on the floor of the trailer body where a person may practice hitting balls with a golf club at the first impact screen while the slideouts are in the extended position." The Simulator satisfies this limitation. On the Golf on Wheels website, Defendants advertise their "versatile play modes" which include the option to play eighteen holes of golf inside the trailer. That necessarily requires a striking zone in which a person may practice hitting golf balls at the impact screen. Additionally, **Image 2** depicts a striking zone in which a person playing golf strikes a physical golf ball at an impact screen.

62.    The fourth limitation is claim 1 is "a projection system for projecting imagery of areas of a golf course onto the first impact screen." The Simulator satisfies this limitation. On the Golf on Wheels website, Defendants advertise their "versatile play modes," including the option

to simulate golf play on more than 120 world-renowned golf courses. Additionally, **Image 2** demonstrates a projection system used to display images of a golf course.

63.    The fifth limitation of claim 1 is "one or more sensors placed about the interior of the trailer body, the one or more sensors capable of obtaining data about a golf ball that was physically struck from the striking zone." According to Defendants' website, the Simulator "harness[es] TrackMan's dual-radar system and high-speed cameras" to measure every golf shot "to the sub-millimeter," including analyzing "launch angle, spin rate, carry distance, and more." This technology necessarily uses sensors to obtain this data about the "golf shot" and therefore satisfies this claim limitation.

64.    The sixth limitation of claim 1 is "a system for graphically simulating the ball that was physically struck from the striking zone being shown as continuing into the projected imagery." The Simulator satisfies this limitation. For example, **Image 2** depicts a yellow line simulating the trajectory of the golf ball that was physically struck from the striking zone at the impact screen.



### COUNT II: INFRINGEMENT OF THE '488 PATENT

65.    Dryvebox incorporates all preceding averments by reference.

66.     By making, using, offering for rent or use, and selling the Simulator, Golf on Wheels infringes at least claim 1 of the '488 patent.

67.     Claim 1 discloses: "a configurable trailer for practicing golf, the configurable trailer comprising: [1] a trailer body, the trailer body comprising one or more moveable slideouts, wherein the one or more moveable slideouts may be positioned in a transit state where the one or more moveable slideouts are set in a first position, and wherein the one or more moveable slideouts may be positioned in an in-use state where the one or more moveable slideouts are set in a second position; [2] wherein the trailer body includes a first impact screen affixed to an interior portion of the trailer body, [3] a striking zone where a person may practice hitting balls with a golf club at the first impact screen while the one or more moveable slideouts are in the second position extended away from the trailer body; [4] a projection system for projecting imagery of areas of a golf course onto the first impact screen; [5] one or more sensors placed about the trailer body, the one or more sensors capable of obtaining data about a golf ball that was physically struck from the striking zone; and [6] a system for graphically simulating the ball that was physically struck from the striking zone being shown as continuing into the projected imagery."

68.     The first limitation of claim 1 is "a trailer body, the trailer body comprising one or more moveable slideouts, wherein the one or more moveable slideouts may be positioned in a transit state where the one or more moveable slideouts are set in a first position, and wherein the one or more moveable slideouts may be positioned in an in-use state where the one or more moveable slideouts are set in a second position." The Simulator satisfies this limitation. For example, the Simulator contains a ceiling, floor, and two moveable slideouts in the two sides of the trailer, as shown below in **Image 1**.



69.    The second limitation of claim 1 is "wherein the trailer body includes a first impact screen affixed to an interior portion of the trailer body." Upon information and belief, the Simulator satisfies this claim limitation. **Image 2** shows a mock-up of the Simulator from Defendants' Golf on Wheels Website under the web page titled "The Simulator."



70.    The third limitation of claim 1 is "a striking zone where a person may practice hitting balls with a golf club at the first impact screen while the one or more moveable slideouts

are in the second position extended away from the trailer body." The Simulator satisfies this limitation. On the Golf on Wheels website, Defendants advertise their "versatile play modes" which include the option to play eighteen holes of golf inside the trailer. That necessarily requires a striking zone in which a person may practice hitting golf balls at the impact screen. Additionally, **Image 2** depicts a striking zone in which a person playing golf strikes a physical golf ball at an impact screen.

71.     The fourth limitation of claim 1 is "a projection system for projecting imagery of areas of a golf course onto the first impact screen." The Simulator satisfies this limitation. On the Golf on Wheels website, Defendants advertise their "versatile play modes," including the option to simulate golf play on more than 120 world-renowned golf courses. Additionally, **Image 2** demonstrates a projection system used to display images of a golf course.

72.     The fifth limitation of claim 1 is "one or more sensors placed about the trailer body, the one or more sensors capable of obtaining data about a golf ball that was physically struck from the striking zone." According to Defendants' website, the Simulator "harness[es] TrackMan's dual-radar system and high-speed cameras" to measure every golf shot "to the sub-millimeter," including analyzing "launch angle, spin rate, carry distance, and more." This technology necessarily uses sensors to obtain this data about the "golf shot" and therefore satisfies this claim limitation.

73.     The sixth limitation of claim 1 is "a system for graphically simulating the ball that was physically struck from the striking zone being shown as continuing into the projected imagery." The Simulator satisfies this limitation. For example, **Image 2** depicts a yellow line simulating the trajectory of the golf ball that was physically struck from the striking zone at the impact screen.

## COUNT III: WILLFUL INFRINGEMENT

74.    Dryvebox incorporates all preceding averments by reference.

75.    Dryvebox prominently displays its patents on its website https://www.dryvebox.com/patents, to notify all competitors, customers, and others about its patented technologies.

76.    On its Patents webpage, Dryvebox explains: "To protect our ideas, and the technology and investments that went into building our products, we applied for and received patents. And we continue to obtain additional patents for advancements we've made. We've created this page to give people context on those patents."

77.    Dryvebox identifies the following U.S. Patents by number on its Patents webpage: U.S. Patents Nos. 11,124,253; 11,130,535; 11,560,193; 11,787,488; 12,139,223.

78.    Dryvebox's website also displays a footer that reads: "Whether you are a total beginner or a scratch golfer, Dryvebox is for you. Learn the game. Perfect your swing. Have fun. With our *patented* golf trailers, we do it all."

79.    Dryvebox's press releases use this statement: "Dryvebox is an off-course golf entertainment company founded in 2020 with a mission to cultivate golf everywhere. The company is known for its events, where people play golf on simulators integrated into the company's high-end, *patented* mobile golf trailers ("Boxes")."

80.    Defendants, through their agent Jerry DelBene applied to become a Dryvebox franchisee through Dryvebox's website, which clearly advertises its patents.

81.    Defendants, through their agent Jerry DelBene, reviewed Dryvebox's Franchise Disclosure Document, which discloses Dryvebox's patents. The Franchise Disclosure Statement informs potential franchisees that the '193 and '488 patents protect technology that will be used

by franchisees. The Franchise Disclosure Statement further claims that the '535 and '253 patents protect technology that franchisees may use depending on the specific use case of the franchisee. To leave no doubt, the Franchise Disclosure Statement quotes claim 1 of the '193 patent in its entirety.

82.     Defendants flagrantly copied Dryvebox's website when designing their own, necessarily showing Defendant's familiarity with Dryvebox's website and its contents.

83.     Defendants' infringement of Dryvebox's patents is knowing, intentional, and willful.

84.     Defendants' infringement of Dryvebox's patents has damaged and continues to damage Dryvebox.

### COUNT IV – COMMON LAW UNFAIR COMPETITION

85.     Dryvebox incorporates all preceding averments by reference.

86.     Under the guise of becoming a franchisee, Defendants requested and obtained valuable information about Dryvebox's patented technology and its business.

87.     Defendants used the information they obtained from Dryvebox to create a direct copy of Dryvebox's Boxes. But Defendants did not stop at copying Dryvebox's products. Defendants also directly copied text, fonts, and colors from Dryvebox's website.

88.     Defendants use of the same text, fonts, and colors from Dryvebox's website, especially in connection with Defendants' operation of a copycat Box, is likely to cause confusion amongst the consuming public.

89.     Defendants have diverted customers away from Dryvebox and its franchisees using Dryvebox's patented technology and goodwill established in Dryvebox's brand.

90.     Defendants have misappropriated the results of Dryvebox's skill, expenditures, and labors.

91.     Defendants' actions in procuring information about Dryvebox's products and business under false pretenses, for the purposes of competing with Dryvebox, copying Dryvebox's patented technology, and copying Dryvebox's website was knowing, intentional and in bad faith.

92.     Dryvebox has lost profits due to Defendants' diversion of customers away from Dryvebox and its franchisees.

93.     Dryvebox has been damaged in an amount to be determined at trial.

## JURY DEMAND

Dryvebox demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dryvebox, Inc. prays that this Court:

1.     Enter judgment in favor of Dryvebox;

2.     Preliminarily and permanently enjoin Defendants from infringing the Dryvebox Patents and from making, using, selling, and offering for sale the Simulator, including under 35 U.S.C. § 283;

3.     Award damages sufficient to compensate for Defendants' infringement together with interest and costs, along with enhanced damages, under 35 U.S.C. § 284;

4.     Find this to be an exceptional case and award reasonable attorney fees under 35 U.S.C. § 285;

5.     Award expenses, and costs as allowed by law; and

6.     Grant other such relief to which Dryvebox may be entitled and that the Court deems just and proper.

Dated: October 2, 2025.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:    /s/ *Kelsey I. Nix*
       Kelsey I. Nix (NY Bar No. 2191633)
       Post Office Box 2611
       Raleigh, North Carolina 27602-2611
       Telephone:  (919) 821-1220
       Facsimile:  (919) 821-6800
       knix@smithlaw.com

       *Counsel for Plaintiff Dryvebox Inc.*